ANNA M. ARNOLD, Respondent, *v.* NORFOLK AND NEW BRUNSWICK HOSIERY COMPANY, Appellant.

*Commendation of his wares by a vendor — when not fraudulent.*

The simple commendation of his wares by a vendor does not constitute fraud, and a dealer may puff his wares, though he must not lie about them.

Upon the sale of exclusive rights under certain letters patent relating to sewing machines, a statement by the vendor that he can make such machines which would go faster, does not constitute a fraud, when the vendee knew that the vendor had never made a machine that went faster than the one referred to.

APPEAL by the defendant, the Norfolk and New Brunswick Hosiery Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Queens on the 10th day of August, 1893, rendered upon the decision of the court after a trial at the Kings County Special Term.

The court before which the action was tried found among other things:

That on the 10th day of April, 1882, the plaintiff and the defendant, for a valuable consideration, executed and delivered, each to the other, a written agreement under seal, made between Anna M. Arnold, of the city of New York, party of the first part, and the Norfolk and New Brunswick Hosiery Company, a corporation created under the laws of the State of New Jersey, and doing busi-

ness in the city of New Brunswick, New Jersey, and at Norfolk, Connecticut, party of the second part, reciting that the party of the first part was the exclusive owner of all rights, title and interest in and to certain letters patent: Letters patent of the United States granted to Satterlee Arnold, dated June 21, 1870, No. 104,532, for an "improvement in modes of uniting edges of knitted goods." Letters patent of the United States granted to Satterlee Arnold, assignor, dated May 10, 1881, No. 241,116, for a "device for securing knit fabrics while being cut and sewed," and letters patent of the United States granted to Satterlee Arnold, assignor, dated November 22, 1881, No. 249,734, for "means for trimming fabrics;" in which the party of the second part was desirous of acquiring certain rights and privileges and providing that the party of the first part thereby granted to the party of the second part the exclusive right for the United States of America under each of the above-named letters patent, and under any other patent which has been or may hereafter, during the continuance of this agreement, be granted to the party of the first part or to Satterlee Arnold, her husband, for any improvement or invention whatsoever, appertaining to or useful in making what is known as the "Anchor stitch seam" or appertaining to "Anchor sewing machine trimming and holding device," and under any such invention now or hereafter during the continuance of this agreement made by said Satterlee Arnold, to make, use and sell any and all kinds of knit shirts or drawers known as "men's, women's and children's underware," with the Anchor stitch seam or Anchor sewing machine trimming, and also to license others so to do. In consideration of which grant the party of the second part thereby covenanted and agreed to pay to the party of the first part, as royalty for and on account of the rights and privileges, certain sums of money on all shirts and drawers upon which said inventions, or either of them, should be used, such royalties to become due and to be paid as therein provided, guaranteeing that said royalties should amount to the average sum of $1,000 per month in every twelve months from and after the 1st day of January, 1883. The party of the first part further covenanted and agreed to furnish the party of the second part, at a reasonable price, as many Anchor sewing machines and appurtenances as the party of the second part should desire.

That such agreement was made, executed and delivered by the defendant after trial and experiment by the defendant of the capacity and operativeness of the machines referred to in the answer herein, and known herein as the Anchor sewing machine No. 1.

That the trial and experiment of said machines so made by the defendant was ample to enable said defendant practically to determine the number of stitches made by said machines per minute, and whether said machines "skipped" stitches or "puckered," and generally to determine the durability, capacity and operativeness of said machines; and

That said contract was made, executed and delivered by said defendant to said plaintiff without any inducement by any false or fraudulent representations made by said plaintiff or her agents in respect to the capacity or operativeness of the said Anchor sewing machine No. 1.

*Walter D. Edmonds* and *John Hunter, Jr.*, for the appellant.

*Blackwell Bros.*, for the respondent.

PRATT, J. :

The question of fact upon which this action depends, was properly determined at Special Term.*

---

* CULLEN, J.:

Mr. Edmonds, I don't think your client is entitled to relief in this case. Now, take this in its broadest aspect, and just see.

In the first place, you take the undisputed facts in this case. This man brought a seam to you. Now, the court has seen what you have produced as a sample of a similar seam, and it appears to be conceded by everybody that it is an excellent seam. Now he is asked, "did you produce that by a machine?" "Yes." There is no fraud in that. He has made the machine. He gives it to you. That the machine that he produced before you would make the stitch is undisputed; because, anyway, the first thing you would ask a man is, "if you have got a seam, let me see the machine which made it." And so a boy in a store for two years would do.

He brought this machine to you. Now, he didn't pretend that he had any other machine. These were the machines which had done that work. He gave them to you, and you had them for a year. Now, I can't believe — all your arguments to the contrary, Mr. Edmonds — that long before the expiration of that year your company was not fully aware of the defects as well as the advantages of that present machine. Yours was an old company. From the fact that they

The opinion there delivered is fully sustained by the evidence. We have examined the numerous exceptions and find none that require discussion.

The judgment should be affirmed, with costs.

DYKMAN, J., concurred.

Order modified.

Order to be settled by PRATT, J.

had been in business so long the court must assume that they were a fairly successful company; and to be fairly successful in these times of sharp competition means business run with heads and brains; and I must believe that your people had just as much wit about an application for an invention of this kind as you would if a man had come and offered to sell you some peculiar, new kind of wool to put in your garments. Of course, the court does not suppose that you had the technical knowledge of the sewing machines in your business such as this man Arnold had; and if he had deceived you on a thing connected with that, the court might and would have granted you relief. But that is not the case. The fact was this. We take the machine as you state it. There is a machine which produces a stitch which is as good a stitch as could be wanted. The trouble is that it won't produce that stitch quick enough to make it pay for you to do it. I won't go over the old argument. How slowly that ran you knew just as well as he did, from actual experience. You knew that anything he told you about what he could do in the future was matter merely of opinion, because he could not have had the practical knowledge. He had never made such a machine. I agree with you, if there were something mechanical, so apparent that any mechanic might have known it — involving a question like the strength of iron, that a layman might be ignorant of — he might have deceived you. But this was plainly nothing of that kind. He said that he could make them go faster, according to your account. Now, that could not be a fraud. It must only be a matter of expectation. You knew he never had made one; otherwise he would have given you the machine that went faster. It was simply a statement of what he hoped to do. He admits that. Now, you have that agreement for six months; that enables you to cut that off. You gave him a part of the profit. You chose to change that into this other agreement. Now, the court cannot believe it took 180 — how many years was this to run?

Mr. EDMONDS.— Seventeen years.

The COURT.— At $12,000 a year?

Mr. EDMONDS.— Yes.

The COURT.— Well, it took over $200,000. Now, the court can't believe but that you used some wit, some business ability about such a thing, and the fact must have been that, whatever the subsequent facts proved to be, you people must have believed that a machine of that kind was a thing which would turn out profitably. Whether it turned out profitably did not depend alone on the machine.

NORFOLK AND NEW BRUNSWICK HOSIERY COMPANY, Respondent, *v.* ANNA M. ARNOLD, Appellant.

76   19|<br>143a 265|

*Vexatious action — order restraining its prosecution.*

A person in bringing suit upon a contract declared to be valid cannot be said to be acting vexatiously or oppressively; on the contrary, he is availing himself of a clear legal right.

An order should not be granted, which restrains a person from prosecuting a certain action, and from bringing any subsequent action, to enforce a contract adjudged to be valid.

APPEAL by the defendant, Anna M. Arnold, from an order of the Supreme Court, made at the Westchester County Special Term and entered in the office of the clerk of the county of Queens on the 24th day of October, 1893, enjoining the defendant from taking

---

It depended on how the market would take the product. Now, it has turned out that it has not been profitable, but what was the cause I do not know. That this plaintiff's husband could have made the representation that you set up in answer, that it would be commercially profitable, cannot be the fact. What would be commercially profitable would depend upon the trade.

Now, this machine has been made, and you have abandoned it. What the reason is does not appear. You say that it is because it would not do any of the work. The court cannot believe that that is the only reason; because after you had had that for a year, when you had had this optional agreement for six months, you never would have taken the risk of tying yourselves up unless you had believed at that time that those goods would pay.

Now, it has turned out the same way as with other people who make speculations and fail on them, who have judgment. It has turned out that you cannot make the goods on that, or that the goods you make don't give you sufficient price, compared to other goods, to make a profit. Whether it is that the market don't take them, and you were mistaken in your judgment when you thought you had such a good thing, I cannot tell. I am very clear it did not come from the defect of the machine. And the same way, as the court has already told you, if you have those eighty machines, if they were running for six or eight months, you would have sent those back, and your correspondence would be filled with the upbraiding of that man for sending a machine which had been defective. And yet you took them.

Now, I can believe that you have got there the machine which you supposed at the time was going to be a good and profitable machine, and that he made some representations about it; I have no doubt that he said it was a good thing, that it was the best invention made, and would revolutionize the trade — probably all

any further proceedings in a certain action brought by her against the plaintiff, or from bringing any other action against it to enforce a certain contract during the pendency of this action.

*Frank E. Blackwell*, for the appellant.

*Walter D. Edmonds* and *John Hunter, Jr.*, for the respondent.

PRATT, J. :

Defendant Arnold has recovered in this court a judgment against this plaintiff upon several installments of a continuous contract, from which judgment an appeal is pending.

Since the first action was begun further installments have become due, to recover which this defendant brings an action in New York Common Pleas.

The plaintiff now brings this suit, praying that defendant be restrained from prosecuting the action in the New York Common

---

those things, and more. The rule is plain that simple commendation does not constitute fraud. A dealer may puff his wares, though he must not lie about them. But I cannot see that there was any statement of fact, or any statement which could be construed as a statement of fact even if it was a matter which could be termed opinion, if it was an existing thing, that he made at that time, which was false. I cannot believe that you ever relied on any statement about the conditions of that machine, and went and made this contract. I don't believe that he made even those promises that they should go so much faster; because if he did, as I say, you would not have taken them when you knew that a machine of 300 was worth nothing. You would have said : "Make me a machine of a 1,000, and then we will make the contract." I don't believe that, also, because you would have sent the machines back.

So much for the character of the machine. Now, you come to another set of facts, and that is as to the representations as to the state of his patent. Now, while a man may puff his goods, a man must not tell falsehoods to induce others to buy them. But did this man tell a falsehood ? Did you act on it ? Did you rely on it ? If I found he had told material falsehoods, it would not take very much evidence to make me believe that you had acted on it, for I am not in favor of fraud in these times. But did he ?

Now, this agreement was very loosely drawn. He does not bind himself to get any particular patents. It is very evident, though, and I find the fact, that it did relate to this anchor stitch. He talked with Mr. Letsen. This letter is produced. I think it is clear as anything can be, from the tone and character of that letter, Mr. Edmonds, that that letter was not meant to be shown to a board of directors ; that that was the very letter that a man would write in the ordinary course. It would be very likely, if he intended it for the board, that he would

Pleas, and from bringing any subsequent action to enforce the contract.

The effect of the judgment recovered was to establish the validity of the contract. The affirmative relief against it, sought in the first action by the present plaintiff, having been denied, and the contract declared valid, the court could not in that action have restrained the successful party from proceeding to enforce the contract. (*Spears* v. *Mathews*, 66 N. Y. 127.) We are at loss to see that the court has in the present action any better right to restrain the successful party from exercising the rights to which it has been declared entitled than it had in the previous action. ( *Waring* v. *Yale*, 1 Hun, 492.)

This defendant in bringing suit upon a contract declared to be valid, cannot be said to be acting vexatiously or oppressively; on the contrary, she is availing herself of a clear legal right.

---

commence: "Mr. Letsen, for the sake of your directors, whom it is to be put before, my proposition is stated." Now, look at that letter. If this was to the board of directors — the very terms of the agreement are not agreed upon. He says: "Now it is your turn to suggest amendments." You have not fixed on the terms of the agreement. So with the whole context of that letter. Unless you imagine a man with ingenuity and genius which would be marvelous, having preconceived this scheme of fraud from the beginning, and, therefore, written a letter not to look like it, that letter was never written to be shown to a directors' meeting at all. Now, Mr. Letsen and this man must have talked together very often about it. It is very evident, really, from this. It is plain that this gentleman, Mr. Carpender, is not entirely memory-clear. His memory has been refreshed from time to time. He may be very wrong, and honestly wrong, on a transaction nine years ago. But when you come to set aside, on the ground of fraud, a contract that has been lived up to, the evidence ought to be plainer than it is.

Now, I think this letter solely applies to the two-stitch patent, and not to the three, and there is nothing there to show that it was otherwise. If he wanted to put it to a board of directors, so that the board of directors would examine them, wouldn't this have put them right on their guard — the opinion which he quoted ? The fact was that the board of directors was Mr. Johnson Letsen. This thing was done by Mr. Johnson Letsen himself, and if the board of directors had been active persons, one of them would have inquired: " What does this mean — there may be a fight there?" Now, I cannot believe anything of the kind. I must believe that Mr. Johnson Letsen knew, from time to time, the condition of these patents. He lived till 1884. Until that time, he knew everything that this man had told and been told. If the machines were furnished in 1883, nothing had come out about the patents. But the fact is, as to how these machines were

Present — PRATT and CULLEN, JJ.

Judgment affirmed, with costs.*

---

working, he was the man, at any time, to have put an end to that contract, and would have done it in his lifetime if this man had told him a falsehood.

There is another thing. Your people don't think they are defrauded themselves. He gave an interest to Ashwell, who has been sitting here with them. If, as you have said (and I don't say it is not subject to that criticism), Arnold sought to interest him in the machine and get you to take it, and you have been defrauded into a contract of nearly $200,000 or more, there is a man who you claim should have been loyal to you, who helps impose this fraud upon you, and yet you keep him there and pay him. If he were the best salesman in his department, you wouldn't have him.

Now, this is an unfortunate speculation for this company, but it is not the only unfortunate speculation which people go into. One of your witnesses told the whole story as well as it could be told. He said: "This is just like perpetual motion. People are always just about to get it." It has proved an unfortunate speculation, but I find that there is no evidence of fraud here in this case.

I should have preferred to have formulated my views in writing. But the time is so short that, as I have to go away, and I want to leave time enough for you gentlemen to present your requests to find, I have preferred to do it at this stage.

---

*This was the judgment finally entered in this case, the discretionary power of the court being exercised in view of the hardship of the case and the order appealed from, upon certain stipulated conditions, being allowed to stand.— [REPORTER.